## STATE OF CONNECTICUT *v.* JAMES JENKINS
### (2896)

DUPONT, C. J., HULL and DALY, Js.

Argued April 29—decision released June 24, 1986

*Christopher C. Sheehan* and *John E. Sparks,* certified legal interns, with whom was *Todd Fernow,* for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, were *David Cohen,* assistant state's attorney, *James G. Clark,* deputy assistant state's attorney, and *Barbara Farrell,* legal intern, for the appellee (state).

DUPONT, C. J. After a trial to a jury, the defendant was convicted of sexual assault in the first degree, a violation of General Statutes § 53a-70 (a), assault in the second degree, a violation of General Statutes § 53a-60 (a) (1), and robbery in the third degree, a vio-

lation of General Statutes § 53a-136 (a). The defendant appeals from the judgment rendered thereafter, claiming that the trial court erred (1) in rejecting the defendant's proposed jury charge on the dangers of eyewitness identification and (2) in violating the defendant's federal and state constitutional rights to a fair trial and an impartial jury by the trial court's allegedly improper treatment of defense counsel throughout the course of the trial.

The jury could have reasonably found the following facts based upon the evidence presented. While the victim was walking home from work at night, a male approached her from behind and to her right. The man crossed in front of the victim, looked at her, and said something in English, which the victim did not understand.[1] The man then snatched the victim's purse from her shoulder, made faces at her, and ran off. The entire incident lasted approximately two to three minutes and took place in an area illuminated by several street lights and a traffic light. The victim, who had good eyesight at the time, was able to observe her assailant at close range.

After trying, unsuccessfully, to hail a passing automobile, the victim walked down the middle of the road toward her home. The same male then reappeared and confronted her again. The victim recognized him as the man who had taken her purse. The victim understood that the man was asking her for money. When she indicated that she had no money, the assailant grabbed the victim by her hair, dragged her across the sidewalk, and threw her onto some nearby hedges. The victim, who was lying face down at the time, struggled with her assailant, who continued to drag her along the ground by her hair. After striking the victim several

---

[1] The victim, whose native language is Spanish, understands little or no English and testified at trial with the aid of an interpreter.

times, the assailant pulled her underneath the porch of a house. The area underneath the porch was partially illuminated by nearby street lights.

Once underneath the porch, the victim momentarily lost consciousness. When she regained consciousness, the victim, whose clothes had been removed, was lying face down and was being sexually assaulted by her assailant. At the same time, the assailant was also pulling the victim's hair and repeatedly banging her head into the ground. After leaving momentarily to investigate a noise, the assailant returned and sexually assaulted the victim again.

The assailant later searched the victim's purse for several minutes. The victim, who was still in a face down position, was able to observe the assailant while he searched her purse. Although her left eye was severely injured as a result of the beating, the victim could still see her assailant clearly out of her right eye. The assailant then read the victim's name on her social security card and asked her if that was her name, to which the victim responded affirmatively. After again hearing noises from outside the porch, the assailant threw the victim's slacks at her and left her under the porch.

After getting dressed and putting her belongings back inside her purse, the victim went to the sidewalk and tried to call for help. The victim also observed her assailant, who ran away when he saw the victim trying to get help. She then went to the door of the same house where she had been assaulted and banged against the door with her body. A woman opened the door and the victim crawled inside and asked her to call the police. The victim was later taken to the hospital and treated for her injuries, which included a blow-out fracture to the orbit of her left eye, and multiple cuts, bruises and bites on various parts of her body.

While in the hospital, the victim selected a photograph of the defendant as her assailant from one of two different photographic arrays shown to her by the police. The two arrays contained over one hundred photographs. She stated that she was positive that the defendant was the man who had assaulted her. She again identified him in a photographic array of another eight pictures. The victim also made an in-court identification of the defendant at trial.

The defendant's first claim of error is that the trial court erred by refusing to give a requested jury charge on the dangers of eyewitness identification. The defendant argues that in order to minimize the danger of misidentification in this case, a jury instruction based upon *Simmons* v. *United States,* 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968), should have been given. The defendant claims that he was substantially prejudiced by the trial court's refusal to give the requested instruction.

At trial, just prior to closing arguments, defense counsel stated that he had a request to charge based on the language used by Justice Harlan in *Simmons* v. *United States,* supra. The trial court inquired whether defense counsel was making a formal request to charge or merely submitting a copy of the case to the court. When defense counsel replied that it was a request to charge, the trial court refused to accept it, stating that the charge was not submitted in the proper form. In granting defense counsel an exception, the trial court stated that it would accept a properly drafted charge, but would not accept the photocopied excerpt from *Simmons* offered by defense counsel.

Our Supreme Court has approved the incorporation of the language from *Simmons* v. *United States* into a properly drafted jury instruction. In *State* v. *Harden,* 175 Conn. 315, 321–22, 398 A.2d 1169 (1978), it was

observed that " '[w]hile a defendant is not entitled to a reading of all that was said about the dangers of misidentification in *United States* v. *Wade* [388 U.S. 218, 228–36, 87 S. Ct. 1926, 18 L. Ed. 2d 1149] and *Simmons* v. *United States* [supra, 383–84], we would think it reasonable that a *properly drafted instruction,* drawing particularly on Mr. Justice Harlan's language in *Simmons,* should be given if requested. Whether failure to do so would constitute reversible error would depend upon the circumstances.' *United States* v. *Fernandez,* 456 F.2d 638, 643–44 (2d Cir. [1972]); see also *United States* v. *Evans,* 484 F.2d 1178, [1188] (2d Cir. [1972])." (Emphasis added.) *State* v. *Harden,* supra;[2] see also *State* v. *Tinsley,* 181 Conn. 388, 393–94, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981). In this case, defense counsel failed to submit a properly drafted request to charge on the issue of identification. See Practice Book § 852;[3] *State* v. *McIntosh,* 199 Conn. 155, 158–59, 506 A.2d 104

---

[2] While a jury charge on the dangers of misidentification may be given in an appropriate case, the failure to give such a charge is not reversible error where the defendant's conviction was not based upon the testimony of eyewitnesses who were uncertain, unclear or inconsistent. See *State* v. *Davis,* 198 Conn. 680, 685, 504 A.2d 1372 (1986); *State* v. *George,* 194 Conn. 361, 375, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985). In this case, the testimony of the victim regarding her identification of the defendant as her assailant was not uncertain, unclear or inconsistent.

[3] Practice Book § 852 provides: "Prior to the beginning of the arguments, sufficient copies of written requests to charge the jury must be filed with the clerk, who shall forthwith hand a copy to the judicial authority and to all other parties. Requests shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the facts supported by the evidence to which the proposition would apply. Requests to charge should not exceed fifteen in number, unless, for good cause shown, the judicial authority permits the filing of an additional number. If a request to charge is granted, the judicial authority shall apply the proposition of law to the facts of the case. A principle of law should be stated in but one request and in but one way. Requests attempting to state in different forms the same principle of law as applied to a single issue are improper."

(1986). Instead, the trial court was merely given a photocopied excerpt from *Simmons* immediately prior to final oral argument. The excerpt from *Simmons* was not a properly drafted request to charge because it contained material inappropriate for a charge such as the *Simmons* court's holding and references to another case and to a prior page of the *Simmons* decision. It was not a single proposition of law clearly and concisely stated, containing facts supported by the evidence to which the legal proposition applied.

Even if the requested jury instruction had been submitted in the proper form, our review of the charge to the jury on this issue, when examined as a whole, indicates that the instructions fairly and adequately presented the case to the jury so that no injustice was done to either party in the case. See *State* v. *Davis,* 198 Conn. 680, 686, 504 A.2d 1372 (1986); *State* v. *McKnight,* 191 Conn. 564, 583, 469 A.2d 397 (1983); *State* v. *Tinsley,* supra, 394; *State* v. *Harden,* supra, 322; *State* v. *Frazier,* 7 Conn. App. 27, 37 n.3, 507 A.2d 509 (1986). Here, the trial court stated that it would include the substance of the defendant's requested instruction on misidentification in its charge to the jury, even though the charge was not submitted in the proper form. Defense counsel conceded that the trial court "probably will cover seventy-five to eighty percent" of the requested instruction in the court's actual charge to the jury. It is not error for a trial court to refuse to charge a jury in the exact words of a requested instruction, as long as the requested charge is given in substance. See *State* v. *Harrell,* 199 Conn. 255, 269–70, 506 A.2d 1041 (1986); *State* v. *Falcone,* 191 Conn. 12, 26, 463 A.2d 558 (1983). The court's charge basically incorporated the substance of *Simmons* and no error was committed by the court as to its charge on identification.

The defendant's second claim of error is that the trial court's treatment of defense counsel throughout the course of the proceedings violated the defendant's federal and state constitutional rights to a fair trial and an impartial jury. The defendant claims that various statements made by the trial court went beyond the scope of permissible commentary and resulted in substantial prejudice to him. Although no objection was made at trial to the allegedly prejudicial remarks, the defendant argues that because the remarks implicate a fundamental constitutional right and a fair trial, his claim may properly be reviewed under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

The state argues that this court should not review this claim because the defendant did not object to the court's comments at trial, nor did he file a motion for a mistrial based upon judicial misconduct. This court may review the defendant's claim "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* supra, 70. Claims of improper judicial commentary, similar to those raised by the defendant, have been held to be appropriate subjects for appellate review under *Evans*. See, e.g., *State* v. *Fernandez,* 198 Conn. 1, 9–10, 501 A.2d. 1195 (1985); *State* v. *Mack,* 197 Conn. 629, 638, 500 A.2d 1303 (1985). The review in this case is limited to whether any of the trial court's statements about which the defendant complains deviated from the impartiality required of the court to such an extent that it infringed on the defendant's right to a fair trial. The defendant identifies seven comments which he claims were improper and resulted in substantial prejudice to him. He does not claim that any single comment was so prejudicial as to deprive him of a fair trial but that the totality of the comments did.

Due process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. See U.S. Const., amend. XIV; Conn. Const., art. I, § 8; *Lisenba* v. *California,* 314 U.S. 219, 62 S. Ct. 280, 86 L. Ed. 166 (1941). In a criminal trial, the judge is more than a mere moderator of the proceedings, and it is his responsibility to conduct a trial in a manner which approaches an atmosphere of impartiality. *Glasser* v. *United States,* 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *State* v. *Fernandez,* supra, 10–12; *State* v. *Gordon,* 197 Conn. 413, 424D–425, 504 A.2d 1020 (1985).

The victim in this case could testify only with the aid of an interpreter, and the trial court could reasonably be expected to make comments or ask questions for the purpose of clarifying the testimony of the victim. Such comments or questions by the trial court are permissible and often necessary, as long as the trial court does not appear to be taking a position of advocacy or its comments on the evidence presented do not direct or advise the jury on how to decide a particular issue. See *State* v. *Mack,* supra, 641; *State* v. *Frazier,* supra, 31. The defendant's characterization of the trial court's comments as "bullying and sarcastic" and his assertion that "the judge showed a disturbing tendency to belittle counsel's efforts to develop major themes relating to identification" are difficult to substantiate since a reviewing court is limited to an examination of a printed record and lacks the benefit of observing the exchanges between the participants involved in the conduct of the trial. See *State* v. *Fernandez,* supra, 13; see also *United States* v. *Nazzaro,* 472 F.2d 302, 304 (2d Cir. 1973); *United States* v. *Grunberger,* 431 F.2d 1062, 1067 (2d Cir. 1970).

Two of the allegedly prejudicial remarks of the court occurred outside of the presence of the jury and did

not affect his right to a fair trial.[4] The other comments did not, either singly or together, deprive the defendant of a fair trial.[5] The comments to which the defend-

[4] These comments occurred during cross-examination of the victim on the defendant's motion to suppress identification evidence. They are:

"[Defense Counsel]: How long did that first confrontation take place?

"The Court: Does she understand the word confrontation? Ask it right."

Later on during the hearing on the motion to suppress, as defense counsel attempted to cross-examine the victim regarding her identification of her assailant, the following exchange took place:

"[Defense Counsel]: Well it's too important to—I'm going to try one more time.

"The Court: Go ahead. But I would say that we should move along."

[5] During the cross-examination of the woman who let the victim into her home after the assault, regarding the lighting conditions at night at the scene of the assault, the following exchange occurred:

"[Defense Counsel]: I object to that, Your Honor. I didn't ask her about under there yet.

"The Court: Well, I want to know what it's all about. Dark is what? It's a relative situation. We're going to have to pin it down and let her know, let her be able to tell us what her part of observation would be in the natural light at that time of night, at that location."

Defense counsel then proceeded to ask the witness further questions which established the darkness of the area in question.

During the defendant's cross-examination of the police officer who showed two groups of photographs to the victim, the court made the following comment to defense counsel in ruling on an objection by the state:

"The Court: Well, we don't need the argument, the question is confusing. Place it again. You know, you could argue, but I don't call for it. If I don't call for it, you can't do it."

The defendant's other objections involve comments by the trial court, during the defendant's cross-examination of the victim. They are as follows:

"[Defense Counsel]: Ask her if she wants a recess. This is very important.

"The Court: Oh no. We move right along."

Moments later, the following exchange took place:

"[Defense Counsel]: Ask her if I'm frightening her by being up here?

"The Interpreter: No. She's never been in Court. She's never gone through this. She's tired."

"The Court: Are you having a private little chat here?

"[Defense Counsel]: No, your Honor.

"The Court: Do you want to put a question?

"[Defense Counsel]: If I might say, off the record,—

"The Court: Not off the record. Go ahead.

"[Defense Counsel]: I don't want to frighten the woman.

"The Court: I understand that."

ant objected were interspersed over a five day trial. Furthermore, in its charge to the jury, the trial court specifically instructed the jury not to consider its comments or conduct, or its exchanges with either counsel, in reaching a decision.[6] Such curative instructions are entitled to great weight and ordinarily prevent an appellate court from finding that the trial court committed reversible error. *State* v. *Fernandez,* supra, 17. The trial court's comments did not deprive the defendant of his right to a fair trial or an impartial jury.

There is no error.

In this opinion the other judges concurred.

---

[6] The trial court's instructions to the jury on this issue were as follows: "This is an adversary situation. You have to understand that. These Gentlemen are opposed. This Gentleman has filed an information, he's charged that man with crimes. He's defending him. I'm not a referee, I'm a Judge of the Court. I just don't decide things based on the momentary thought. So you have to understand that your concern is with the State of Connecticut and the Accused. So whether Counsel or I, in any way, have exhibited any conduct whatever that you find—that you don't feel is appropriate in your values don't let that interfere with your deliberations in regard to this case. Your function is your function and it should be unimpaired by any other personality feeling. How I speak to him . . . or how he responds to me doesn't bear on this case. I don't know of any basis for you to be concerned with that. But on the other hand, if it's there you never know. So put it out of your mind."