STATE OF CONNECTICUT *v.* RICHARD A. SILLER
(4856)

BORDEN, DALY and BIELUCH, Js.

Argued June 9—decision released September 15, 1987

*James M. Connolly,* for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom was *Gerald Eisenman,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction rendered against him in accordance with the jury's verdict of guilty of the crime of attempt to commit sexual assault in the fourth degree, in violation of General Statutes §§ 53a-49, and 53a-73a (a) (1) (A) and (a) (2). He was found not guilty of risk of injury to a child. The defendant claims that the trial court's interruption of the direct examination of the defendant, its chastising of his counsel, and its limiting of the cross-examination of the victim denied him a fair trial. We find no error.

The jury could reasonably have found the following facts. On March 30, 1984, the victim, then thirteen years old, spent the night at a girlfriend's (hereinafter Kelly) house in Stratford. During that evening and into the early morning hours of the next day, Kelly's mother was working in a nearby restaurant. The defendant, a friend of Kelly's mother, was also on the premises. The defendant and the mother were involved in a stormy relationship and the defendant lived with the mother at her home on an intermittent basis. The two frequently quarrelled over a 1982 red Corvette which

had been purchased by the defendant with substantial financial assistance from the mother. At approximately 2:30 a.m., on March 31, 1984, the victim and Kelly retired to Kelly's bedroom where they occupied a large waterbed. At approximately 2:45 a.m., prank telephone calls for the girls commenced. The defendant knocked on the girls' bedroom door and asked Kelly to speak to the callers and to tell them to stop. The calls persisted. At approximately 3:30 a.m., the defendant went again to Kelly's bedroom and asked her to call her mother at the restaurant, using the downstairs telephone, to inform her that the telephone was being taken off the hook. While Kelly complied with this request, the defendant entered Kelly's bedroom, attempted to fondle the victim, and left a short time later. Upon Kelly's return to the bedroom, the victim asked Kelly not to leave her alone again and then locked the bedroom door. Some time after 5 a.m., the defendant unlocked the bedroom door with an ice pick and again attempted to touch the victim. She rolled across the bed in an effort to elude the defendant's touch. Kelly remained asleep. Kelly's mother's return home a short time later caused the defendant to leave the bedroom. Later in the morning, the victim informed Kelly what had occurred, and, at approximately 9:30 a.m., the victim informed Kelly's mother of the early morning events. Charges were filed against the defendant one month later.

In his first claim, the defendant argues that the trial court's repeated interruptions of his testimony and its chastisement of his counsel throughout the course of the proceedings violated his right to a fair trial and an impartial jury. Although not objected to at trial, these claims are properly reviewable under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). See *State* v. *Jenkins,* 8 Conn. App. 35, 41, 510 A.2d 1370 (1986).

Due process requires that a defendant be given a fair trial. A fair trial is one conducted with substantial conformity with the law, before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. *State* v. *Jenkins,* supra, 42; see U.S. Const., amend. XIV; Conn. Const., art. I, § 8; *Lisenba* v. *California,* 314 U.S. 219, 62 S. Ct. 280, 86 L. Ed. 166 (1941); *Wojculewicz* v. *Cummings,* 145 Conn. 11, 19, 138 A.2d 512, cert. denied, 356 U.S. 969, 78 S. Ct 1010, 2 L. Ed. 2d 1075 (1958).

" 'No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest impartiality. If he departs from this standard, he casts serious reflection upon the system of which he is a part. A judge is not an umpire in a forensic encounter. . . . He is a minister of justice. . . . He may, of course, take all reasonable steps necessary for the orderly progress of the trial. . . . In whatever he does, however, the trial judge should be cautious and circumspect in his language and conduct.' . . . 'It is his responsibility to have the trial conducted in a manner which approaches an "atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." ' " (Citations omitted.) *Cameron* v. *Cameron,* 187 Conn. 163, 168–69, 444 A.2d 915 (1982); *State* v. *Hardwick,* 1 Conn. App. 609, 611, 475 A.2d 315, cert. denied, 193 Conn. 804, 476 A.2d 145 (1984). The court should never assume a position of advocacy, whether real or apparent, and should avoid any appearance of hostility or skepticism toward the defendant's case or the state's case. *State* v. *Smith,* 200 Conn. 544, 549, 512 A.2d 884 (1986); *State* v. *Drouin,* 12 Conn. App. 101, 104–105, 529 A.2d 740 (1987).

The defendant does not claim that any single interruption of him or rebuking of his counsel was so preju-

dicial as to deprive him of a fair trial, but that all of the trial court's comments taken together infringed upon his right to a fair trial. *State* v. *Jenkins,* supra, 41.

The defendant never moved for a mistrial. Appellate courts are "reluctant to award a new trial where those most concerned, better placed than we to assess the courtroom atmosphere, did not view the remarks to be so prejudicial as to warrant a new trial and preferred to stake the outcome on the trial under way. 'We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial.' *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 616, 236 A.2d 466 (1967)." *State* v. *Mack,* 197 Conn. 629, 642, 500 A.2d 1303 (1985).

The record does not disclose what occurred at bench conferences. Some of the allegedly improper remarks were made outside the presence of the jury and, therefore, did not affect the defendant's right to a fair trial. *State* v. *Jenkins,* supra, 42–43. In addition, after a careful review of the entire transcript we find no impropriety in the court's comments which were made in the presence of the jury.

Our review of the transcript discloses that the allegedly improper conduct of the trial court was directed at eliminating leading questions, having the witness respond to the questions asked and avoiding irrelevant testimony.[1]

---

[1] The trial court's comments included the following during direct examination of the defendant.

"The Court: You answered the question.

"Q. Did you spend any time—

"The Court: I don't want to pick on you, only answer Mr.—you've got a very good lawyer, he'll ask you all the questions necessary to get your story. Don't keep going. Just answer the questions asked you. Okay.

"The Witness: Okay. . . .

The judge took no position of advocacy regarding the outcome of the case, and made no improper comments on the significance of the evidence presented. At no time did the judge convey to the jury his opinion as to the guilt or innocence of the defendant. Further, neither the judge's comments nor his questions impugned the defendant's credibility. See *State* v. *Day,* 12 Conn. App. 129, 136–37, 529 A.2d 1333 (1987); *State* v. *Drouin,* supra. The trial judge's actions do not appear to have thwarted the defendant's counsel's ability to defend his client. *State* v. *Gordon,* supra, 425.

"The Court: What was—were the living—he asked you what were the living conditions—living arrangements. Answer his question if you can. If you can't tell him you can't. . . .

"The Court: Excuse me, you must respond to the question. When was the next time you had a personal relationship, your answer is about cards. You're editorializing. Answer the question, please. If you don't understand the question tell your counsel you don't understand the question.

"The Witness: Okay. . . .

"Q. Richard, what is it?

"A. A stop payment order.

"Q. For what purpose?

"A. She repossessed the car.

"Q. She, who do you mean?

"A. The police officers came to 906 Judson Place—

"The Court: What were you stopping payment on?

"The Witness: The August car payment.

"The Court: To whom?

"The Witness: G.M.A.C. . . .

"Q. Can you identify this document?

"A. Yeah.

"Q. What is it?

"A. Money order.

"Q. What was the purpose of the money order?

"The Court: He cannot testify from a document not in evidence.

"Mr. Connolly: I am not asking him to testify from the document, I am asking him to further identify it, if he can.

"The Court: Can you identify it further?

"The Witness: Yes.

"The Court: Go ahead.

"The Witness: It was to cover the check for the August payment.

"Mr. Connolly: I'll offer it as an exhibit.

"The Court: Any objections?

The comments to which the defendant alludes were interspersed over a ten day trial. Furthermore, in its charge to the jury, the trial court complimented both counsel on doing an excellent job during the trial and stated: "If I have made any reference to the position of the state or the accused I assure you it is not my intention to convey to you, directly or indirectly, how the court feels as to what should be the outcome of the case. The decision rests in your hands and yours alone." Such a curative instruction is entitled to great weight and will usually prevent a finding of reversible error

"Mr. Eisenman: I object. It is not dated, it could cover any payment.

"The Court: The jury is excused. Don't discuss this matter by, among or between yourselves or accept, receive any evidence. . . .

"The Court: The jury is directed to disregard that last part. I caution you once again.

"The Witness: Okay.

"The Court: I don't want to have to caution you again.

"The Witness: All right.

"The Court: Self serving statements which are not part of the examination. . . .

"Q. What did he tell you?

"The Court: All right. Now, the jury—

"Mr. Connolly: I'll withdraw the question.

"The Court: The jury is excused. Don't discuss this matter by, among, between yourselves. In fact, we will take a recess now. . . .

"The Court: Counsel all this testimony is designed, I suppose, to test the credibility of [the mother] and becomes important if it's contrary to something—[the mother's] testimony and I don't recall any testimony of [the mother] about all this.

"Mr. Connolly: Well, your Honor, I'm not claiming it solely on that basis. I'm also—

"The Court: What other basis are you asking the question of this accused regarding the Corvette if it's not—doesn't go to credibility of [the mother].

"Mr. Connolly: It goes to the relationship.

"The Court: The relationship is not relevant, it's the credibility.

"Mr. Connolly: Your Honor. I think it ties together in that—

"The Court: No it doesn't. The jury is excused. . . .

"The Court: I don't want to keep cautioning you. When was the first time you started dating her and you came back with, the first time she invited me out.

"I don't know why you're doing what you're doing and caution you, don't do it. Answer the question. . . . "

by a reviewing court. *State* v. *Jenkins,* supra, 44. On the basis of our careful examination of the trial transcript, we conclude that the trial court's comments did not deprive the defendant of a fair trial or an impartial jury.

The defendant also argues that the trial court improperly limited his cross-examination of the victim. The defendant duly excepted at trial to the limitation. The defendant sought to inquire into the victim's alleged hostility toward men and boys in general and, in particular, toward her own father. The defendant claims that this hostility was relevant to the issue of her credibility concerning the accusations made against him.

This claim has not been properly preserved because the defendant presented nothing for this court to review. "The [defendant] failed to observe the requirements of Practice Book 3060F (c) (3) [now § 4065 (d) (3)] which requires that an appellant's brief include, inter alia, the question, the objection and its ground, the claimed ground of admissibility, the ruling and the exception. The bare assertion in a brief that the evidence was improperly excluded, coupled with transcript page references, will not suffice. . . . It is our strong policy that rulings claimed as evidentiary errors to be reviewed by this court be provided and printed in the briefs as required and outlined by the Practice Book." (Citation omitted.) *Osborne* v. *Osborne,* 2 Conn. App. 635, 641, 482 A.2d 77 (1984).

There is no error.

In this opinion the other judges concurred.