## STATE OF CONNECTICUT *v.* GARY MESSIER
## (4855)

DUPONT, C. J., SPALLONE and O'CONNELL, Js.

Argued May 6—decision released September 27, 1988

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, with whom, on the brief, was *John T. Redway,* state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2) and 53a-8, and two counts of robbery in the second degree in violation of General Statutes § 53a-135 (a) (1). The defendant's eleven enumerated claims of error fall into five general categories. He claims that the trial court erred (1) in refusing to recuse itself after presiding over pretrial negotiations, (2) in denying his motion for acquittal, (3) in admitting evidence of uncharged misconduct, (4) in its charge to the jury, and (5) in denying the defendant a fair trial due to its treatment of defense counsel throughout the course of the proceedings. We find error in part.

The jury could reasonably have found the following facts. On or about August 14, 1984, the defendant and Tammy Towler-Davis, broke into the apartment of the victim, assaulted him and demanded to know the whereabouts of certain illegal drugs (quaaludes) and a sum of money which were discovered missing from the apartment the defendant shared with Towler-Davis and his codefendant, Peter Mannetho.[1] The victim relinquished a handful of quaaludes that he had taken from Nancy Gill, the defendant's former housemate. The vic-

---

[1] The defendant and Mannetho were tried together before a jury of six. Mannetho is not, however, a party to this appeal.

tim claimed that Gill had taken them from the defendant. Having failed to uncover any money, the intruders left with the drugs.

On August 21, 1984,[2] the defendant, Towler-Davis and Mannetho, all of whom had been drinking, returned to the victim's apartment seeking the return of the quaaludes or payment therefor. Upon opening the door, the victim was assaulted by the defendant who forced his way into the apartment. The defendant also assaulted the victim's visitor, Richard Knudsen, knocking him to the floor. As the defendant and the victim argued in the living room, Towler-Davis approached Knudsen, who remained on the kitchen floor, and took money from his wallet. She and Mannetho then searched the apartment for other valuables.

The incident ended with the arrival of the police. No arrests occurred because the victim convinced the police that the altercation they had come to investigate had ended. The defendant and his cohorts left the victim's apartment shortly thereafter, taking with them a leather jacket and a stereo as collateral for the return of the missing money and drugs. The defendant was subsequently arrested for his involvement in the two incidents.

I

The defendant first claims that the trial judge erred in refusing to recuse himself in light of his participation in the pretrial phase of the case. The defendant made this request on the morning the trial was scheduled to commence, arguing that the judge's involvement in the preliminary discussions prevented the defendant from receiving a fair trial. In response to the defendant's request for a rectification of the trial court record, the trial court, *Mulcahy, J.,* filed certain findings regarding the refusal of Judge Fishman, who

---

[2] The defendant was acquitted of the burglary and first degree robbery charges stemming from the incident that occurred on this date.

had presided over the defendant's pretrial negotiations and trial, to recuse himself.[3]

"It is axiomatic that the burden of establishing a record that a judicial impropriety has occurred which demonstrates or gives the appearance of bias or partiality so as to require recusal rests with the party who claims the occurrence of such an impropriety." *State* v. *Santangelo,* 205 Conn. 578, 584, 534 A.2d 1175 (1987). Compliance with Practice Book § 997[4] affords the moving party the opportunity to compile such a record. *State* v. *Maluk,* 10 Conn. App. 422, 426, 475, 523 A.2d 928 (1987). Here, however, the defendant failed to comply with the Practice Book requirement by making only an oral request. Our Supreme Court, in *State* v. *Santangelo,* supra, recognized that despite failure to adhere to procedural requirements, "the serious consequences of the defendant's conviction and the fact that his claim goes to his fundamental, constitutional right to a fair trial [permits us to review] the available record despite its procedural deficiencies." Id., 585; *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973). We therefore will review the defendant's claim.

If the available evidence had indicated that the trial court had actively participated in the plea negotiations during the pretrial conference, his recusal would have been mandatory. *State* v. *Fullwood,* 194 Conn. 573, 580, 484 A.2d 435 (1984); *State* v. *Gradzik,* 193 Conn. 35, 37, 475 A.2d 269 (1984). "[O]ur rules of practice expressly

[3] Due to the death of Judge Milton Fishman, Judge John F. Mulcahy, Jr., presided over an evidentiary hearing seeking to determine the extent of Judge Fishman's participation in the pretrial negotiations.

[4] "[Practice Book] Sec. 997. PROCEDURE.

"A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

authorize the trial judge to do no more than to indicate whether a proposed agreed disposition may be accepted or rejected. . . . Active involvement by trial judges in plea negotiations has frequently been criticized." (Citations omitted.) *State* v. *Fullwood,* supra, 580–81.

The dangers of active participation by trial judges in plea negotiations are obvious. " 'In the first place . . . [such participation] is likely to impair the trial court's impartiality. The judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement (and in the quick disposition of the case made possible by the bargain) and may therefore resent the defendant who rejects his advice. . . . In the second place, judicial participation in plea discussions creates a misleading impression of the judge's role in the proceedings. "As a result of his participation, the judge is no longer a judicial officer, or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant." *United States* v. *Werker,* [535 F.2d 198, 203 (2d Cir.), cert denied, 429 U.S. 926, 97 S. Ct. 330, 50 L. Ed. 2d 296 (1976)].' " *State* v. *Gradzik,* supra, 47, quoting *United States* v. *Adams,* 634 F.2d 830, 840–41 (5th Cir. 1981).

An examination of the record, including Judge Mulcahy's findings, indicates that recusal was not required in the present case. The case was pretried by Judge Fishman in early February, 1985, for approximately twenty minutes. The state's attorney outlined the criminal conduct charged and defense counsel offered mitigating information. The extent of Judge Fishman's participation included asking the state's attorney, "What are you looking for?" and responding to the effect that the state's offer "sounded reasonable." The defendant rejected the offer and the trial was eventually scheduled for September 18, 1985. On

the morning of September 18, the settlement offer was repeated to the defendant in the court's presence and was again rejected. Shortly thereafter defense counsel orally requested the court to recuse itself.[5]

Having reviewed the record, we find that the trial court's pretrial involvement in this case was minimal and did not rise to the level of "active participation" as described in *State* v. *Fullwood,* supra. "In the absence of [a damaging] record, we have no basis for concluding that the trial judge's pretrial activities so impaired, or appeared to impair, his ability to act as a judicial officer or a neutral arbiter that it was error to deny the motion for disqualification." Id., 581.

[5] In addressing the defendant's oral request for recusal, Judge Fishman stated: "With regard to the cases that are about to start I wish to make it clear that I am not suggesting or encouraging a plea bargain. I have not participated in plea negotiations between the State's Attorney and defense counsel in the determination of what charges to bring or what recommendations to make at the sentencing and whether or not the defendants should plead guilty. I have no personal stake in any agreement and I do not care whether either defendant enters a guilty plea or not. The matter was discussed at pretrial and I indicated at that time what the disposition of each case might be, given the information which was then available to me. I have no idea whether additional information and/or testimony or a jury verdict would cause me to change my mind and I approach the proceeding hereafter with an open mind and without any preconceived notions as to the guilt or innocence of each of the accused, or what the appropriate disposition should be if either of the defendants is convicted. We are ready to select a jury at this time and if counsel are ready I will have the jury panel brought in and we can start the process.

"[Defense Counsel:] Your Honor, I would like to object to the Court hearing this case in view of the pretrial negotiations that occurred. And I think that the defendants cannot be afforded a fair trial when the Court has been involved in the preliminary discussions.

"The Court: I have indicated my feelings on the record. Your objections are noted and they are overruled and you may have exceptions. The Court again makes it very clear that I have no personal stake, nor do I feel any concern at this time for a plea bargain and I have not indicated in any way whether or not the defendants should plea bargain or whether they should negotiate with the State's Attorney and I have not been a part of that. I·have made my statement for the record. I have no idea whether they are guilty or innocent and I really don't care. The objections are overruled and you may have an exception."

## II

The defendant next contends that the trial court erred in denying his motion for a judgment of acquittal of the first degree burglary and second degree robbery charges that arose out of the August 14, 1984 incident. He claims that the evidence demonstrated that his only intent on that date was to reclaim his property which he believed the victim had stolen. We do not concede the existence of property rights in contraband, but it is not necessary to ponder the question in view of our disposition of this claim of error.

At trial, the jury was presented with conflicting evidence concerning the ownership of the quaaludes. The victim testified that Gill had told him that the drugs belonged to the defendant. On direct examination, however, the defendant denied ownership and stated that the drugs belonged to Towler-Davis, who had received them as collateral for a loan. It was the defendant's claim that his apartment had been burglarized sometime before midafternoon on August 13, 1984, and that Towler-Davis' quaaludes and his $1200 were taken. He believed that the victim was involved in the theft and visited him in order to retrieve the money. Hence, the defendant argues that he lacked the intent to commit larceny or any other crime.

General Statutes § 53a-21 provides in pertinent part that "[a] person is justified in using reasonable physical force upon another person . . . when and to the extent he reasonably believes it necessary to regain property which he reasonably believes to have been acquired by larceny within a reasonable time prior to the use of such force . . . ."

First, even if the jury believed that the defendant was the owner of any of the property at issue and that his actions on August 14, 1984, were motivated by his

desire to reclaim his property, the jury could not have reasonably concluded that his actions were "reasonable" as required under General Statutes § 53a-21. A defendant in pursuit of the repossession of his property cannot burglarize another's home and assault him with impunity. We conclude, therefore, that a defendant cannot expect to avoid a conviction by employing such a defense. See *State* v. *Woolfolk,* 8 Conn. App. 667, 672, 517 A.2d 252 (1986), cert. denied, 202 Conn. 802, 519 A.2d 1207 (1987).

Further, we conclude, after examining the record, that the evidence presented was sufficient to support a conviction of the crimes charged. "The standard is whether ' "[t]he jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." ' *State* v. *Dumlao,* 3 Conn. App. 607, 613, 491 A.2d 404 (1985), quoting *State* v. *Giorgio,* 2 Conn. App. 204, 211, 477 A.2d 134 (1984). In addition, the evidence must be given a construction most favorable to sustaining the jury's verdict. *State* v. *Dumlao,* supra. Applying that standard to this case, we find there was sufficient evidence, if believed by the jury, to sustain the convictions." *State* v. *Nieves,* 13 Conn. App. 60, 66, 534 A.2d 1231 (1987).

### III

The defendant next claims that the trial court erred in admitting into evidence a photograph depicting evidence of uncharged misconduct, on the grounds that the photograph was irrelevant and highly prejudicial. The photograph in question is one of fourteen that were taken in the execution of a search warrant at the defendant's apartment in November, 1984. It displays an open clothes dryer that contained a small container, a pipe and a flashlight.

Out of the presence of the jury, the state made an offer of proof as to each of the fourteen photographs, and four were ultimately admitted as full exhibits. The three admitted which are not at issue here displayed the stereo allegedly taken from the victim's apartment on August 21, 1984, and a front view of the defendant's apartment building.

During the state's offer of proof, it was disclosed that the container found in the dryer was subsequently seized and several white pills, believed by.the police officers to be quaaludes, were found inside. The state's attorney sought to introduce this picture and testimony from the police officers at the scene to demonstrate that the defendant and those residing at that location at the time of the crimes on appeal were involved with drugs. The defendant argued that this evidence was irrelevant because he was not charged with possession of the quaaludes and because the state failed to show a connection between these pills, which were discovered more than two months after the crimes charged, and the crimes.

The trial court overruled the defendant's objections and denied his subsequent motions for mistrial and motions to strike the testimony concerning the pills. The court ruled that the evidence was admissible on the issue of credibility, even though it may have been linked to other crimes not at issue in the defendant's trial. The trial court found the evidence relevant to the defendant's as well as the victim's credibility, which the defense had attacked by cross-examining the victim concerning his involvement with quaaludes.[6]

First, it appears that the defense opened the door to evidence concerning quaaludes generally, and, in so

[6] On cross-examination, the victim testified to the existence of quaaludes that allegedly came from the defendant's apartment. He admitted to stealing a handful of them as well as to a history of selling and using illegal drugs such as quaaludes.

doing, allowed the state to pursue that field of inquiry. See *State* v. *Delosantos,* 13 Conn. App. 386, 389, 536 A.2d 609 (1988). At various points in the trial, the defendant's involvement with quaaludes was discussed. The defendant's counsel cross-examined the victim about his purchase of a quaalude from the defendant, and, in addition, extensively cross-examined the victim about a purchase of quaaludes he had witnessed the defendant make. "In this case, '[t]he field of inquiry was opened by the defendant and he cannot complain if the state attempted to clarify that field, even if the evidence would otherwise be inadmissible. *State* v. *Roy,* [173 Conn. 35, 50, 376 A.2d 391 (1977)]; see *State* v. *Glenn,* 194 Conn. 483, 498–99, 481 A.2d 741 (1984).' *State* v. *Bowman,* 3 Conn. App. 148, 154, 485 A.2d 1343 (1985)." *State* v. *Delosantos, supra,* 389.

Even if we assume, arguendo, that the trial court erred in admitting the photograph, our review of the record as a whole fails to persuade us that such an error would influence the jury's verdict. Hence, it would be harmless. *State* v. *Silva,* 201 Conn. 244, 250–51, 513 A.2d 1202 (1986); *State* v. *Foshay,* 12 Conn. App. 1, 28–29, 530 A.2d 611 (1987).

### IV

The defendant's next category of claims concerns the propriety of the jury charge in several respects. The defendant first claims that the trial court erred in failing to instruct the jury that an owner may retake his own property when it is illegally taken from him. The defendant did not request this charge nor was such a charge given. We note at the outset that we have examined the charge, and we conclude that despite the absence of such an instruction, the charge as a whole was proper. "In reviewing a challenge to a portion of the jury instructions, the proper test is 'whether the charge, considered as a whole, presents the case to the

jury so that no injustice will result.' " *State* v. *Shindell,* 195 Conn. 128, 143, 486 A.2d 637 (1985), quoting *State* v. *Estep,* 186 Conn. 648, 652, 443 A.2d 483 (1982). We conclude that the instruction in question met this standard and that no injustice resulted.

Furthermore, we note as justification for upholding the trial court's charge concerning this claim, that in light of our determination in part II of this opinion, supra, the defendant did not use "reasonable" physical force in attempting to retake his property, and any instruction in that regard would have been improper.

The defendant next contends that the trial court's instruction on intoxication was improper. The defendant cites individual phrases and expressions from the intoxication instruction in presenting his arguments with regard to this portion of the charge. Examining words or phrases in a vacuum, however, is not the proper manner in which to determine the propriety of a charge. To present an appellate argument in this manner is counterproductive, by drowning the significant substance of the claim in the minutia set forth. Such manner of argument further "represents the kind of microscopic examination of the charge discountenanced by our Supreme Court in *State* v. *Mastropetre,* 175 Conn. 512, 524, 400 A.2d 276 (1978)." *State* v. *Lopez,* 5 Conn. App. 599, 604, 502 A.2d 418 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146 (1986). We conclude that the instruction regarding intoxication was proper and that the defendant's claims are disposed of by our Supreme Court's holdings in *State* v. *Utz,* 201 Conn. 190, 513 A.2d 1191 (1986), and *State* v. *Stevenson,* 198 Conn. 560, 504 A.2d 1029 (1986), which upheld similar jury instructions.

The defendant's next claim of instructional error alleges that the trial court erred in its *Secondino* missing witness instruction, by giving a generalized

instruction that failed to refer by name to individual witnesses. More precisely, the defendant claims that he was denied the benefit of the instruction as to two potential state witnesses, and was prejudiced by the drawing of an unfavorable inference with regard to a potential witness for the defense. We conclude that the defendant was not entitled to the instruction with regard to the two potential witnesses for the state, he having failed to demonstrate their availability, and that the state, to the contrary, *was* entitled to such an instruction regarding the defense witness in question.

The law regarding the propriety of a *Secondino* instruction is well settled. " 'The failure to produce a witness for trial who is available and whom a party would naturally be expected to call warrants an adverse inference instruction against the party who would be expected to call that witness. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 674–75, 165 A.2d 598 (1960).' *State* v. *Santangelo,* [supra, 596]; see also *State* v. *Amarillo,* 198 Conn. 285, 307, 503 A.2d 146 (1986). An inquiry into the appropriateness of a *Secondino* instruction is, accordingly, two-pronged: whether the witness is 'available' and whether, under the facts of this case, the witness is one whom [a party] would naturally be expected to produce." *State* v. *Wood,* 208 Conn. 125, 140, 545 A.2d 1026 (1988).

The potential witnesses for the state, Gill and Robert Maikowski, were, respectively, a former housemate of the defendant who allegedly had stolen a portion of the drugs in question from the defendant, and a person who had overheard the defendant bragging about a subsequent attack on the victim. The defendant was not entitled to a *Secondino* instruction regarding either of these witnesses, as he had failed to establish that they were available to testify. The witnesses' availability " 'was a fact to be shown by the [defendant] as the [party] to be benefited by the inference . . . .' (Cita-

tions omitted.) *Fontaine* v. *Coyle,* 174 Conn. 204, 209, 384 A.2d 616 (1978). Further, '[b]efore a negative inference can be drawn from a party's failure to produce a witness, it must be shown that the party was able to procure the witness' *physical presence in court.* (Emphasis added.) *Shelnitz* v. *Greenberg,* 200 Conn. 58, 74–75, 509 A.2d 1023 (1986).' " *State* v. *Wood,* supra, 140. The defendant stated in a footnote to his reply brief that: "The witnesses were available. They were listed on the state's list of witnesses." That statement "does not constitute an evidentiary showing of availability." *State* v. *Wood,* supra. The defendant has failed to meet his burden with regard to the first prong of the *Secondino* inquiry; id., and because of that failure, it is unnecessary to consider whether the state naturally would have produced these witnesses. Id., 141.

Moreover, if the jury inferred that the *Secondino* instruction referred to Towler-Davis, the potential defense witness who was mentioned but did not testify, that inference was not erroneous, as such an instruction regarding Towler-Davis was appropriate.

After Towler-Davis was called to testify by the defendant, but before she took the witness stand, the state indicated, out of the jury's presence, that it might pursue a perjury charge if Towler-Davis' testimony was inconsistent with prior statements she had made. As a result, the defendant elected not to present her as a witness. These facts clearly indicate that Towler-Davis was available to testify. Further, because she had entered guilty pleas for her participation in the crimes at issue in the defendant's trial, and because she was a participant in each of those crimes, she possessed superior knowledge of the case. Because Towler-Davis possessed such knowledge, the jury could have easily inferred that she was a witness the defendant would naturally be expected to produce. Cf. *State* v. *Brown,* 169 Conn. 692, 705–706, 364 A.2d 186 (1975) (labora-

tory analyst's testimony would be cumulative to that of chief toxicologist and therefore did not constitute "superior knowledge").[7]

The defendant next contends that the trial court's instruction precluded a unanimous jury verdict as it was unclear from the verdict whether the jury found the defendant guilty of burglary (1) because he *intentionally* attempted to inflict injury, or (2) because he *knowingly* made such an attempt. See General Statutes § 53a-3 (11) and (12).

Our resolution of this claim is controlled by our ruling in *State* v. *Benite,* 6 Conn. App. 667, 675, 507 A.2d 478 (1986). In *Benite,* this court found harmless error in the trial court's failure to instruct a jury that it must be unanimous in determining by which theory of commission of a crime the defendant was found guilty. This court held that there was no reasonable possibility that the jury was misled. In that decision, the fact that the information filed against the defendant was available to the jury during deliberations, coupled with the court's instruction, "in general terms," that the verdict be unanimous, were factors which led to the finding of harmless error. *State* v. *Benite,* supra, 677.

In the present case, we note that in addition to the trial court's reading of the information by which the defendant was charged, the jury had the information with them during deliberations, and the trial court instructed the jury on three occasions that their verdict had to be unanimous. Our examination of the jury charge and the record as a whole leads us to conclude

[7] The defendant's reliance upon *Shea* v. *Tousignant,* 172 Conn. 54, 372 A.2d 141 (1976), is misplaced. In that case, our Supreme Court held that a *Secondino* instruction given in the abstract, without any "allusion" to the evidence, was improper. We find that the trial court's allusion to "certain witnesses who it was claimed, by their testimony, might have thrown light on the situation before you," was sufficient to distinguish this case from *Shea.*

that we " ' "may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." ' *Rose* v. *Clark,* 478 U.S. 570, 576, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), quoting *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)." *State* v. *Coleman,* 14 Conn. App. 657, 679, 544 A.2d 194 (1988).

The defendant contends in his next claim of instructional error that the trial court's charge on burglary in the first degree allowed the jury to convict him on the basis of a nonexistent aggravating element, namely, a reckless attempt to inflict injury. The defendant claims that by reading the statutory definition of burglary in the first degree, without limiting the elements contained therein to those charged in the information, the trial court impermissibly enlarged the crime with which he was charged. We find error, and remand the case for a new trial on the conviction of burglary in the first degree.

Both this court and our Supreme Court have condemned the reading of more of the statutory definition of a crime than is applicable to the facts of the case, when to do so would tend to mislead the jury. *State* v. *Belton,* 190 Conn. 496, 501–502, 461 A.2d 973 (1983); *State* v. *Cole,* 8 Conn. App. 545, 553, 513 A.2d 752 (1986). Such a claim of error is reviewable if the record supports a claim that the defendant was prejudiced or suffered unfair surprise. *State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22 (1986). We conclude that the defendant was prejudiced by the charge as it allowed the jury to convict him on a legally unavailable theory. Although not raised in the trial court, the defendant's claim is reviewable under *State* v. *Evans,* supra, as it involves the defendant's constitutional right to a fair trial. *State* v. *Williams,* 202 Conn. 349, 363, 521 A.2d 150 (1987). The trial court charged, in part, that "[a] person acts recklessly when he is aware of and con-

sciously disregards a substantial and unjustifiable risk that such result will occur." The court went on to state, one sentence later, that "[t]he defendant need not have actually inflicted bodily injury on anyone as long as he *attempted* to inflict such injury on someone in the course of committing the burglary." (Emphasis added.) Because the trial court's instruction allowed the jury to convict the defendant of burglary in the first degree on a theory of "reckless attempt" to commit bodily injury, we find error in the charge.

Our Supreme Court has held that "[a]ttempt liability requires that the defendant entertain the intent required for the substantive crime." *State* v. *Almeda,* 189 Conn. 303, 309, 455 A.2d 1326 (1983); see also *State* v. *Beccia,* 199 Conn. 1, 505 A.2d 683 (1986) (conspiracy to commit reckless arson not legally cognizable). Because the charge as given created the element of "reckless attempt," which element does not exist, the charge impermissibly expanded the manner in which the defendant could have been convicted of burglary in the first degree. We find error and remand the case for a new trial on that charge.

In his final claim of instructional error, the defendant argues that the trial court charged the jury on unsupported or other legally unavailable theories of commission. We have thoroughly reviewed the record and the evidence presented and we conclude that the defendant's claim, with the exception of the previously discussed reckless attempt claim, is without merit. " ' "On appeal, the adequacy of jury instructions is not determined by the giving of any one instruction, but by examining the instruction as a whole." ' *State* v. *Brown,* 199 Conn. 14, 27, 505 A.2d 690 (1986) [quoting *United States* v. *Boekelman,* 594 F.2d 1238, 1240 (9th Cir. 1979).]" *State* v. *Delosantos,* supra, 391. The evidence supports the charge as given and, reading it as a whole, we conclude that it was proper.

## V

In his final claim, the defendant argues that the trial court's comments to defense counsel throughout the proceedings deprived him of a fair trial. "A fair trial is one conducted with substantial conformity with the law, before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm." *State* v. *Siller,* 12 Conn. App. 395, 398, 530 A.2d 1106 (1987). "The defendant is entitled to a new trial . . . only where he can show that prejudice resulted from the court's actions." *State* v. *Gordon,* 197 Conn. 413, 425, 504 A.2d 1020 (1985).

Our examination of the entire transcript indicates that the court, at times, appeared to be provoked and irritated by defense counsel's actions. The majority of the allegedly improper comments, however, occurred outside the presence of the jury and concerned the trial court's attempts to eliminate leading questions and irrelevant testimony. See *State* v. *Siller,* supra, 399. Our examination further discloses that none of the comments made in the presence of the jury in any way conveyed the court's opinion as to the defendant's guilt or innocence. Id., 400. Further, the court did not improperly comment on the significance of the evidence presented or on the merits of the defendant's case.

We find that defense counsel zealously argued his case, fully cross-examined witnesses, and challenged the state's evidence. Thus, the trial court did not thwart defense counsel's ability to defend his client. Id. Finally, the court's statements and its charge provided the jury with curative instructions in the event its statements or conduct were in any way misconstrued. Such instructions are entitled to great weight. Id., 401; *State* v. *Jenkins,* 8 Conn. App. 35, 37, 510 A.2d 1370 (1986). Hence, we conclude that the defendant received a fair trial.

There is error in part, the conviction of burglary in the first degree is vacated and the case is remanded for a new trial on that charge only.

In this opinion the other judges concurred.