## STATE OF CONNECTICUT *v.* EDWIN A. WOOLFOLK
### (2593)

DUPONT, C. J., DALY and BIELUCH, Js.

Argued March 18—decision released August 26, 1986

*Robert J. Sweeney,* assistant public defender, for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Patrice Amendola,* legal intern, for the appellee (state).

BIELUCH, J. The defendant was convicted by a jury of the crimes of robbery in the first degree, in violation of General Statutes § 53a-134 (a) (2), carrying a pistol without a permit, in violation of General Statutes § 29-35, and stealing a firearm, in violation of General Statutes § 53a-212 (a). On appeal from the judgment rendered, the defendant raises two claims of error. We find no error.

The jury could reasonably have found the following facts: In the midafternoon of September 29, 1982, the defendant met with Danny Hayward and Jessie Hardy at the latter's home. At the defendant's suggestion, the three men engaged in a dice game for money. They gambled for about two hours, during which time the defendant lost all of the money that he had with him, approximately two or three hundred dollars. After the game ended, the defendant left the premises, but returned later to reclaim his money, alleging that the dice used in play were "fixed." Hardy denied the allegation and refused to refund the defendant's money.

Later that afternoon, the defendant encountered Hayward and Hardy at a nearby fish market. Words were exchanged, but no physical altercation took place. Shortly thereafter, the defendant accosted the other two in back of the shopping plaza. At that confrontation, he snatched some money from the hand of Hayward, tearing a five dollar bill in half in the process. This was done after he pointed a loaded and operable .45 caliber revolver at him. After picking up the portion of the money that fell to the ground, the defendant rode off on his bicycle to a friend's apartment, where he was arrested a short while later after being identified by the two victims. A police search of the area of the arrest uncovered the loaded weapon under a bed. The gun matched the description of the weapon used in the robbery given by the two complainants. After the defendant was arrested, he was taken to the police station where he gave a statement indicating that he took the money because Hayward and his brother owed him $66. The gun, he claimed, had been purchased a day or two before from an unidentified person for $50 and was not displayed or used in a robbery or threat against Hayward and Hardy. In his testimony, he stated that "I had [the gun] in my pants, but I didn't pull it out. . . . Never pulled it out."

After the jury returned its verdict of guilty to the three charges, the trial court sentenced the defendant to a total effective term of twelve years, execution to be suspended after nine years, with three years probation thereafter. The defendant appeals from that judgment, claiming that the trial court erred (1) in refusing to instruct the jury as to the use of physical force in defense of property as set forth in General Statutes § 53a-21, and (2) in failing to give the requested charge relating to justification as a defense in the language of § 53a-21. These assignments of error, in substance, are related, being two sides of the same coin.

The defendant requested the following charge: "Our statutes provide that '[a] person is justified in using reasonable physical force upon another person . . . when and to the extent he reasonably believes it necessary to regain property which he reasonably believes to have been acquired by larceny within a reasonable time prior to the use of such force . . . .'[1] Therefore, if you conclude that Mr. Woolfolk reasonably believed that his money had been acquired by Mr. Hayward by larceny then you must find the defendant not guilty of Robbery 1st. Remember it is not necessary for Mr. Woolfolk to prove that, in fact, his money was taken by Mr. Hayward by larceny. All that is necessary is for Mr. Woolfolk to reasonably believe that his money had been acquired by Mr. Hayward by larceny (e.g. through the use of 'fixed dice')." In its charge to the jury, the court described the various elements of the crime of robbery in the first degree and explained the burden of proof that was required of the state to establish all of those elements beyond a reasonable doubt for a con-

[1] General Statutes § 53a-21 provides further: "but he may use deadly physical force under such circumstances only in defense of person as prescribed in section 53a-19." Under General Statutes § 53a-3 (5), " 'deadly physical force' means physical force which can be reasonably expected to cause death or serious physical injury."

viction. The defendant took an exception to the court's failure to give his requested charge on the applicability of General Statutes § 53a-21, which he then called an "affirmative defense."

General Statutes § 53a-12 provides: "(a) When a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt. (b) When a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence." In this appeal, the defendant now maintains that the "[u]se of physical force in defense of property [in accordance with § 53a-21] is not an affirmative defense under Connecticut General Statutes." Instead, he claims, it may be asserted as a defense by way of justification pursuant to General Statutes § 53a-16, which provides in part that "justification, as defined in sections 53a-17 to 53a-23, inclusive, shall be a defense" in any prosecution for an offense.

The state, on the other hand, maintains on appeal that "a given affirmative defense is legally available and an affirmative defense charge therefore required only when the defendant has introduced a quantum of evidence sufficient, in the trial court's reasoned judgment, to warrant giving the instruction." Such a measure of evidence, the state claims, the defendant did not produce at trial. Therefore, the prosecution was not obligated to prove the nonexistence of an affirmative defense which is legally unavailable to the defendant. For that reason also, the state maintains, the court properly excluded the defendant's request to charge, since it was not obligated to charge on a theory of defense not supported by the evidence.

The defendant's designation at trial, and the plaintiff's description on this appeal, of justification under

§ 53a-21 as an "affirmative defense" are erroneous. The dispositive issue before this court is the defendant's entitlement at trial to a theory of defense charge.

A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. *State* v. *Miller,* 186 Conn. 654, 660, 443 A.2d 906 (1982). The identification of a defense as an affirmative defense is relevant to the burden of proof in establishing such defense. The defendant has the burden of proving an affirmative defense by a preponderance of the evidence, while all other defenses must be disproven by the prosecution beyond a reasonable doubt. General Statutes § 53a-12. This is so because an affirmative defense does not serve to negate an element of the crime which the state must prove in order to convict, but constitutes a separate issue or circumstance on which the defendant is required to carry the burden of persuasion. *State* v. *Wilkinson,* 176 Conn. 451, 464, 408 A.2d 232 (1979).

General Statutes § 53a-16 provides that "[i]n any prosecution for an offense, justification, as defined in sections 53a-17 to 53a-23, inclusive, shall be a defense." Justification under these statutes, and in particular as claimed here under § 53a-21, is not an affirmative defense. The "lack of justification is an element of a criminal prosecution on which the state bears the burden of proof." *State* v. *Preyer,* 198 Conn. 190, 199, 502 A.2d 858 (1985); *State* v. *Cassino,* 188 Conn. 237, 241, 449 A.2d 154 (1982).

The precise question before us is therefore independent of the issue of burden of proof of a defense at trial, the determination of which is controlled by § 53a-12 in accordance with the classification of a defense as affirmative or nonaffirmative in nature. We have before us the resolution of whether the defendant was entitled to a theory of defense charge predicated upon his use of physical force in defense of property under

§ 53a-21. Narrowed down, the issue is whether that defense was made at trial, for under § 53a-12 all defenses, affirmative and nonaffirmative, must be "raised at a trial."

Our Supreme Court recently ruled on a defendant's entitlement to a theory of defense charge as follows: "We have held that when a defendant 'admits the commission of the crime charged but seeks to excuse or justify its commission so that legal responsibility for the act is avoided, a theory of defense charge is appropriate.' *State* v. *Rosado,* 178 Conn. 704, 707, 425 A.2d 108 (1979). . . . [T]he defendant's claim of an innocent intent, if accepted by the jury, would negate an essential element of the crime and mandate a verdict of not guilty. This defense is intrinsically factual, however, and not of the type which we have held to require a distinct instruction as part of the trial court's charge. A general 'claim of innocence or a denial of participation in the crime charged is not a legally recognized defense and does not entitle a defendant to a theory of defense charge.' *State* v. *Rosado,* supra. A theory of defense instruction is appropriate, upon proper request; *State* v. *Preyer,* [supra]; only when evidence supporting a 'legally recognized defense' is placed before the jury. *State* v. *Cassino,* [supra, 243]; *State* v. *Rosado,* supra; see *State* v. *Harris,* 189 Conn. 268, 274, 455 A.2d 342 (1983)." *State* v. *Silveira,* 198 Conn. 454, 461–62, 503 A.2d 599 (1986).

In the first count, the defendant was accused of robbery in the first degree, in violation of General Statutes § 53a-134 (a) (2). The portion of the penal code pertinent here provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . he . . . is armed with a deadly weapon . . . . " The weapon need not be "exhibited, displayed, utilized or referred to in order for one to be

considered 'armed' '' within the requirements of § 53a-134 (a) (2) for a conviction of robbery in the first degree. *State* v. *Anderson,* 178 Conn. 287, 294, 422 A.2d 323 (1979).

The defendant's defense of justification expressed in his requested charge is predicated upon that portion of General Statutes § 53a-21 which provides: "A person is justified in using reasonable physical force upon another person . . . when and to the extent he reasonably believes it necessary to regain property which he reasonably believes to have been acquired by larceny within a reasonable time prior to the use of such force . . . . " Because the defendant's claim is not a "legally recognized defense" under our law to a charge of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), the trial court did not err in denying his request to charge.

The justification defense allowed under General Statutes § 53a-21 is expressly limited to the use of *reasonable* physical force in the defense of property. By its limiting proviso, excluded from the defendant's request to charge, one "may use deadly physical force under such circumstances only in defense of person as prescribed in section 53a-19." Under General Statutes § 53a-3 (5), " '[d]eadly physical force' means physical force which can be reasonably expected to cause death or serious physical injury."

The defendant's claimed defense, predicated only upon that portion of § 53a-21 which allows *reasonable* physical force in defense of property, is inapplicable to the charge of robbery while armed with a deadly weapon because of the further provision of the statute not referenced in his requested charge, but which applies to the offense of robbery while armed with a deadly weapon and precludes the use of deadly physical force in the defense or retrieval of personal prop-

erty. In substance, the defendant's alleged defense constitutes a denial that the admitted robbery was committed by him while armed with a deadly weapon, an element of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) which the prosecution had to prove for a conviction on that charge.

A review of the evidence at trial claimed by the defendant to support his theory of defense, when viewed in the light most favorable to him, fails to establish any foundation for a legally recognized defense to his admitted robbery while carrying on his person a revolver fully loaded with live bullets. The defendant testified as follows: Two acquaintances of long standing, Jessie Hardy and Danny Hayward, invited him to play dice for money with their dice at Hardy's home. At first Hardy and Hayward were losing to the defendant, who then offered to quit playing, but the other two talked him into continuing to gamble. When the defendant lost about one hundred dollars, he went home and got some more money. Eventually, he lost between $200 and $300, when the other two quit playing. Hardy's brother then told the defendant that they had played with trick dice, although the defendant had seen nothing wrong with them while throwing the dice. He claimed, however, that the other two had let him roll the dice more times than they had rolled. His demand that they return his money was refused. He then left.

The defendant next went to a friend's house to get his gun. This was a revolver fully loaded with live bullets. With this on his person, the defendant returned to the Hardy home to ask again that his lost money be returned to him. Hayward repeated that he could not get his money back and shut the door on him. After waiting there for about one half hour, the defendant left and went to a nearby fish market to buy some fish. Before leaving the fish market after his purchase, Hardy and Hayward came in and asked the defendant

if he was looking for them. The defendant backed away from them and said he would not fight them. Hardy and Hayward then left. When they turned the corner, the defendant told the salesgirl that he would be back and that he "was going to get my money from them." The defendant then followed the other two to the back of Dixwell Plaza, where they stopped when he hailed them. After getting off his bicycle, he asked for the return of his money. They refused him. At that, he "snatched" whatever money Hayward had in his hand. When he saw that a five dollar bill was left, he "snatched the five and the five dollars ripped. Half of it fell on the ground. I just picked it up, got on my bike and left." Before he left, "they told me [Hayward] got the rest of the money at his house, come and get it. I said, next time I see you, you better have it." He remained on the avenue until the police arrived and he saw Hardy and Hayward go to the patrol car.

The loaded gun was in the defendant's pants. He never pulled it out, but he had zipped down his jacket and did not know whether Hardy and Hayward had seen the gun. He admitted, however, that they probably saw the bulge made by the gun and that they knew he possessed the gun because they had seen it a day or two before when he had shown it to others. The defendant's evidence concluded with his testimony that he was happy "because I had a gun and I wanted to use it for protection. Anybody try to get something through me, I would show them my gun."

We conclude that neither the affirmative testimony of the defendant, nor the evidence brought out on cross-examination of the prosecution's witnesses, together with any reasonable inferences drawn from their direct testimony, support a legally recognized defense to the first count of robbery while armed with a deadly weapon in violation of General Statutes § 53a-134 (a) (2). Whether the defendant argued his

theory of defense to the jury without objection we are unable to determine from the record before us. There is no transcript of counsel's argument. We, therefore, do not consider whether such an argument would require the trial court to give the jury relevant instructions pertaining to the theory of defense.

The Model Penal Code § 3.02 (1) (a) provides that conduct which would otherwise constitute a criminal offense may be legally excused or justified, provided that "the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged." This provision was not adopted in the enactment of our penal code in 1969. See Public Acts 1969, No. 828. Under § 53a-21, one is justified in using only *reasonable physical force* upon another person in defense of property.

In the present case, the defendant seeks to justify the commission of robbery in the first degree, while armed with a deadly weapon, in violation of General Statutes § 53a-134 (a) (2), a class B felony, by claiming that it was necessary to prevent what is illustrated by the facts then to have been no more than a larceny in the third degree, a class B misdemeanor. See General Statutes (Rev. to 1981) § 53a-124. This he cannot do. A person is not reasonably justified as a matter of law in committing armed robbery in order to prevent the commission of a minor larceny. The theory of defense requested by the defendant was legally inadequate to justify the commission of the felony as charged. The trial court did not err in refusing to charge on the theory of defense of justification as requested.

There is no error.

In this opinion the other judges concurred.