******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TREMAINE SMITH
(SC 19314)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued April 20—officially released June 30, 2015*

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Terence D. Mariani*, senior assistant state's attorney, for the appellant (state).

*Elizabeth M. Inkster*, assigned counsel, with whom was *Samuel A. Greenberg*, deputy assistant public defender, for the appellee (defendant).

*Opinion*

ROGERS, C. J. The issue that we are required to address in this certified appeal is whether the state is required to prove as an element of the crime of robbery in the first degree, as set forth in General Statutes § 53a-134 (a), that the defendant was not the owner of the property that he was accused of taking from another. The defendant, Tremaine Smith, was charged with attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (3), and attempt to commit kidnapping in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-92 (a) (2) (B). The jury found the defendant guilty of attempt to commit robbery in the first degree and acquitted him of the attempted kidnapping charge, and the trial court rendered judgment in accordance with the verdict. Thereafter, the defendant appealed from the judgment of conviction to the Appellate Court claiming, among other things, that the state had failed to prove that he did not own the property that he had been convicted of attempting to take from the complainant, Shakela Cooper, and that this was an element of the crime of robbery in the first degree. *State* v. *Smith*, 148 Conn. App. 684, 694, 86 A.3d 498 (2014). The Appellate Court agreed with the defendant that the state had the burden of disproving that he owned the property; id., 706; and that it had failed to meet this burden. Id., 711. Accordingly, the court reversed the judgment of conviction of attempt to commit robbery in the first degree and remanded the case to the trial court with direction to render a judgment of acquittal on that charge. Id., 721. Thereafter, we granted the state's petition for certification to appeal on the following issue: "Did the Appellate Court properly determine that the defendant's conviction of attempt to commit robbery in the first degree in violation of . . . §§ 53a-49 (a) (2) and 53a-134 (a) (3) must be reversed and judgment [of acquittal be] directed because there was insufficient evidence to convict him of attempt to commit robbery in the first degree?" *State* v. *Smith*, 311 Conn. 947, 91 A.3d 462 (2014). We answer the certified question in the affirmative.

The jury reasonably could have found the following facts. While the defendant was in prison in August, 2009, he mailed $294 in cash to Cooper, who was his girlfriend, and told her to use the money to hire an attorney or to obtain a bond for him. Cooper told the defendant that she would do so, but she never did. Instead, she kept the money. On November 30, 2009, the defendant was released from prison. At approximately 7:30 p.m. that day, the defendant was driving around the city of Waterbury with Shanika Crews. When the defendant saw Cooper, Cooper's brother and a friend of Cooper's walking toward the Waterbury Plaza, he got out of Crews' vehicle, confronted Cooper and

attempted to force her to go with him to get his money by grabbing her and threatening her with a knife. The defendant ultimately told Cooper's friend that Cooper "better have my money," told Cooper that he would stop by her house later and walked away. Later that evening, Cooper went to the Waterbury police station and gave a statement about the incident. The state ultimately charged the defendant with attempt to commit robbery in the first degree and attempt to commit kidnapping in the first degree.

The jury trial commenced on February 16, 2011. After the state presented its evidence, the defendant filed a motion for a directed verdict on both charges. With respect to the attempt to commit robbery charge, defense counsel argued that "there was not enough evidence from which an intent to commit . . . a larceny can be found" because "all the facts show [is] that [the defendant] attempted to regain property that belonged to him, that he had a legal right to, not [that he was] taking the property of another person." The defendant also requested, in the alternative, that the trial court instruct the jury pursuant to General Statutes § 53a-21[1] that it could consider whether the defendant was justified in using reasonable physical force against Cooper in order to regain his own property. The trial court concluded that the defendant was not entitled to an instruction pursuant to § 53a-21 because the statute only allows reasonable physical force in defense of property and, therefore, does not apply to § 53a-134 (a) (3), which requires proof that the defendant used a dangerous instrument during the robbery. Cf. *State* v. *Woolfolk*, 8 Conn. App. 667, 672A, 517 A.2d 252 (1986) (§ 53a-21 "is inapplicable to the charge of robbery while armed with a deadly weapon"), cert. denied, 202 Conn. 802, 519 A.2d 1207 (1987); see also General Statutes § 53a-21 (person "may use deadly physical force under such circumstances only in defense of person as prescribed in section 53a-19"). The court held for the same reason that the defendant was not entitled to a judgment of acquittal on the ground that he owned the money that he had attempted to take from Cooper. Thus, the court implicitly held that, because the defendant had been charged with using a dangerous instrument to attempt to take the money from Cooper, the fact that he owned the money was not a defense to the robbery charge. Accordingly, the court denied the defendant's motion for a judgment of acquittal on the charge of attempt to commit robbery in the first degree.[2]

Thereafter, the trial court instructed the jury that "[a] person commits larceny when, with intent to deprive another of property, he wrongfully takes, obtains, or withholds such property from an owner." It further instructed the jury that "[w]rongfully means that the defendant had no . . . legal justification or excuse for taking the property. Under the circumstances of this case, the defendant had no legal justification or excuse

to seek, through the use of force or the threat of the use of force, repayment of any money that . . . Cooper may have owed him." After the jury began its deliberations, the jurors sent a note to the trial court requesting further explanation regarding "the issue of possession of the money." The note stated that "[o]ur specific concern regards the issue of recovering what you perceive as your own property/larceny-robbery. In our deliberations should we be discussing who the money rightfully belongs [to]." In response to this request, the trial court repeated its instruction that the defendant had no justification or excuse to use force or the threat of force to recover the money and further stated that "the fact that the defendant perceived that the $294 was rightfully his, does not permit him, lawfully, to use force or the threat of the use of force, to get the money back." The defendant objected to the additional instruction on the ground that the original instruction had been sufficient.

The jury found the defendant guilty of attempt to commit robbery in the first degree and acquitted him of the charge of attempt to commit kidnapping in the first degree. The defendant subsequently filed a motion for a new trial, in which he contended that the trial court improperly had failed to instruct the jury that the intent to take property that belonged to another is an element of the crime of first degree robbery and that the defendant could not be convicted of attempt to commit that crime if the jury found that he "had an innocent intent under a good faith claim or color of right to get his $294 back." The defendant also filed a motion for acquittal raising the same claim. The trial court denied both motions and rendered judgment in accordance with the jury verdict.

The defendant appealed from the judgment of conviction to the Appellate Court claiming, inter alia, that "the evidence was insufficient to establish beyond a reasonable doubt that he, with the intent to deprive another of property, wrongfully attempted to take, obtain, or withhold such property from an owner, pursuant to the larceny statute, General Statutes § 53a-119, and that the state was required to prove all of the elements of larceny in order to prove all of the elements of attempt to commit robbery in the first degree."[3] *State* v. *Smith*, supra, 148 Conn. App. 694. The Appellate Court agreed with the defendant's claim and, accordingly, reversed the judgment of conviction and remanded the case to the trial court with direction to render a judgment of acquittal on the charge of attempt to commit robbery in the first degree.[4] Id., 721. This appeal followed.

The state claims that the Appellate Court incorrectly held that it was required to prove that the defendant did not own the money that he attempted to take from Cooper as an element of the crime of attempt to commit robbery in the first degree.[5] We disagree.

Whether the state must prove that a defendant was not the owner of money that he took from another as an element of the crime of robbery in the first degree is a question of statutory interpretation over which we exercise plenary review. *State* v. *Fernando A.*, 294 Conn. 1, 13, 981 A.2d 427 (2009). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) Id. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id., 13–14.

We begin with the language of the relevant statutes. Section 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime  . . .  (3) uses or threatens the use of a dangerous instrument . . . ." General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." Finally, General Statutes § 53a-118 (a) (5) defines " 'owner' " as "any person who has a right to possession superior to that of a taker, obtainer or withholder."

Thus, the plain and unambiguous language of the statutes provides that, if a defendant has a right to

possession that is superior to the right of the person from whom he took property; see General Statutes § 53a-118 (a) (5); the defendant has not committed a larceny because the person from whom he took the property was not the owner, as required by § 53a-119. Section 53a-133 also clearly provides that a defendant can be convicted of robbery only if he has committed a larceny. Accordingly, the plain and unambiguous language of the statutes supports the Appellate Court's interpretation that a defendant cannot be convicted of any form of robbery if the defendant was the owner of the property that he took from another. Indeed, the state concedes that this court previously has held that the state is required to prove that a defendant committed a larceny as an element of first degree robbery. *State* v. *Lewis*, 245 Conn. 779, 787, 717 A.2d 1140 (1998) ("[i]n order to prove the commission of a robbery, the state must prove that the defendant committed larceny"); see also *State* v. *Jordan*, 135 Conn. App. 635, 655, 42 A.3d 457 (2012) ("[t]o prove that a defendant is guilty of robbery, the state must prove that the defendant had the specific intent to commit a larceny"), rev'd on other grounds, 314 Conn. 354, 390, 102 A.3d 1 (2014). The state also concedes that "[o]ne who takes property in good faith, under fair color of claim or title, honestly believing that . . . he has a right to take it, is not guilty of larceny even though he is mistaken in such belief, since in such case the felonious intent is lacking." (Internal quotation marks omitted.) *State* v. *Varszegi*, 33 Conn. App. 368, 373, 635 A.2d 816 (1993), cert. denied, 228 Conn. 921, 636 A.2d 851 (1994); see also id., 374 "([i]f a person takes property in the honest, though mistaken belief, that he has a right to do so, he has not committed larceny"), citing *State* v. *Main*, 75 Conn. 55, 57, 52 A. 257 (1902). Thus, the state concedes that both the common law and the unambiguous language of the relevant statutes supports the Appellate Court's conclusion that the defendant could not be convicted of attempt to commit robbery because the state conceded that he owned the property that he was accused of attempting to take from Cooper.

The state contends, however, that the application of the literal language of the governing statutes to cases involving the use of force leads to "unconscionable, anomalous or bizarre results." *State* v. *Salamon*, 287 Conn. 509, 524, 949 A.2d 1092 (2008). Specifically, the state contends that requiring the state to prove that a defendant did not own property that the defendant took from another *by force* would violate the public policy against violent self-help. Accordingly, the state contends, this court should now hold that the fact that a defendant had no intent to commit larceny because he intended only to take his own money is not a defense to a charge of robbery. See id., 525 (court not bound by literal language of statute when it leads to bizarre results); see also *United States* v. *Rutherford*, 442 U.S.

544, 552, 99 S. Ct. 2470, 61 L. Ed. 2d 68 (1979) ("[e]xceptions to clearly delineated statutes will be implied only where essential to prevent 'absurd results' or consequences obviously at variance with the policy of the enactment as a whole").

We are not persuaded. The robbery statutes prohibit the use or threat of physical force *to commit a larceny.* If a defendant had no intent to commit a larceny, we can perceive no reason why the legislature would have intended that the defendant still could be charged with robbery instead of being charged with other offenses, such as assault, unlawful restraint, threatening or reckless endangerment, that criminalize the use or threatened use of restraint or physical force, standing alone.[6] Indeed, the defendant in the present case was originally charged with assault in the third degree in violation of General Statutes § 53a-61, unlawful restraint in the first degree in violation of General Statutes § 53a-95, reckless endangerment in the second degree in violation of General Statutes § 53a-64, threatening in the second degree in violation of General Statutes § 53a-62, and breach of the peace in the second degree in violation of General Statutes § 53a-181. Although the state has cited several cases from other jurisdictions in which courts have concluded that the fact that the defendant owned the property that he was charged with taking from another is not a defense to a robbery charge, those cases do not explain why charging the defendant with a crime for which he lacked the requisite intent is the only way to discourage "lawless reprisal as an appropriate means of redressing grievances, real or fancied."[7] (Internal quotation marks omitted.) *State* v. *Hobbs*, 64 P.3d 1218, 1223 (Utah App.), cert. denied, 72 P.3d 685 (Utah 2003). Accordingly, we do not find those cases persuasive. Moreover, even if we were to agree with the state that public policy supports its position, a literal interpretation of the statutes certainly does not give rise to a *bizarre* result, and mere disagreement with legislative policy would not authorize us to ignore the legislature's plain intent.

We also are not persuaded by the state's argument that the legislature intended that § 53a-21 would provide the exclusive defense to a charge that a defendant used physical force to take property from another.[8] Section 53a-21 provides in relevant part that "[a] person is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent an attempt by such other person to commit larceny . . .  or when and to the extent he reasonably believes such to be necessary to regain property which he reasonably believes to have been acquired by larceny within a reasonable time prior to the use of such force . . . ." The state contends that, because this statute provides the exclusive defense to a charge that a defendant has used physical force to take property from another, and,

because the statute does not apply when a defendant has used unreasonable force, a defendant who has used unreasonable force to take his own property from another may be charged with robbery. In support of this claim, the state relies on the Appellate Court's decision in *State* v. *Messier*, 16 Conn. App. 455, 549 A.2d 270, cert. denied, 209 Conn. 829, 552 A.2d 1216 (1988). In that case, the defendant was convicted of one count of burglary in the first degree and two counts of robbery in the second degree after he broke into the victim's apartment on two occasions, assaulted the victim and took from him money and other valuables. Id., 456–57. On appeal to the Appellate Court, the defendant contended that he could not be convicted of burglary or robbery because he owned the property that he had taken. Id., 461. The Appellate Court treated the defendant's claim as raising a justification defense pursuant to § 53a-21 and concluded that, even if the defendant owned the property, his actions were not justified because they were not " 'reasonable' " as required by that statute.[9] Id., 461–62.

As we have explained, however, under the plain language of the governing statutes and the common law, a person who takes his own property from another simply has not committed a larceny. Accordingly, as we have also explained, a defendant who used unreasonable force to take his own property (or, indeed, a third person's property) from another person in order to prevent an attempted larceny could not be charged with robbery in the first instance, but could be charged only with an offense involving the use or threatened use of physical force, such as assault or unlawful restraint. Thus, it is apparent that § 53a-21 was intended to provide a justification defense to a charge involving the unlawful use of physical force and has no effect on the lawfulness of a person's conduct in taking his own property from another. See *State* v. *Smith*, supra, 148 Conn. App. 727 (*Sheldon, J.*, concurring) ("[t]he careful articulation of the defense of justification, as set forth in § 53a-21, was obviously designed to establish . . . *limitations on the use of force* to accomplish the *lawful* purpose of retaking stolen property from a thief, not to determine the lawfulness, as a threshold matter, of the underlying retaking, which was unquestioned in light of the owner's lack of felonious intent" [emphasis added]). Accordingly, we reject the state's claim that § 53a-21 somehow bars a defendant from raising the claim that he did not commit a larceny as a defense to a robbery charge. To the extent that *State* v. *Messier*, supra, 16 Conn. App. 455, can be interpreted as indirectly supporting the proposition that a defendant may be convicted of an offense requiring proof of an intent to commit larceny if the defendant was the owner of the property that he was accused of taking from another, it is hereby overruled.[10]

Finally, the state claims that this court's decision

in *State* v. *Morant*, 242 Conn. 666, 701 A.2d 1 (1997), supports its claim that a defendant's ownership of property that he took from another is not a defense to a charge of robbery. We disagree. In *Morant*, the defendant was convicted of two counts of felony murder. Id., 667. The jury reasonably could have found that the defendant and an accomplice had shot the two victims and taken money and contraband drugs from them. Id., 668–69. The defendant appealed from the judgment of conviction to this court, claiming that he could not be convicted of robbery, which was the predicate offense for the felony murder charges, because he owned the money and drugs that he took from the victims. Id., 670. This court concluded that the defendant was precluded from claiming ownership of contraband, the possession of which is illegal, or money obtained from its sale. Id., 671–72. The court further concluded that, for purposes of § 53a-118 (a) (5), which defines " 'owner,' " the victims' custody and control of the contraband was sufficient to support a charge of larceny. Id., 673; see also *State* v. *Crosswell*, 223 Conn. 243, 252–54, 612 A.2d 1174 (1992) (victims' custody and control of money was sufficient to establish that they were owners under § 53a-118 [a] [5] when evidence established that defendant was not owner and was not acting on behalf of rightful owner when he took property from victims). Thus, this court in *Morant* merely held that a defendant cannot claim ownership in *contraband* for purposes of raising a defense to a robbery charge, and that a victim's possession and control of *contraband* is sufficient to establish ownership under § 53a-118 (a) (5). The court did not hold that a defendant's ownership of the property that he was accused of taking from another is never a defense to a robbery charge or that a robbery victim's mere possession of property is always sufficient to establish ownership.[11]

Accordingly, we conclude that the Appellate Court properly reversed the judgment of conviction on the charge of attempt to commit robbery in the first degree and remanded the case to the trial court with direction to render a judgment of acquittal on that charge.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 53a-21 provides: "A person is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes such to be necessary to prevent an attempt by such other person to commit larceny or criminal mischief involving property, or when and to the extent he reasonably believes such to be necessary to regain property which he reasonably believes to have been acquired by larceny within a reasonable time prior to the use of such force; but he may use deadly physical force under such circumstances only in defense of person as prescribed in section 53a-19."

[2] The trial court also denied the defendant's motion for a judgment of acquittal on the charge of attempt to commit kidnapping in the first degree.

[3] The defendant's insufficiency of the evidence claim was premised on his argument that the state was required to prove that he did not own the money that he attempted to take from Cooper in order for the jury to convict him of attempt to commit robbery in the first degree. As we have explained,

however, the trial court instructed the jury that the defendant's ownership of the money would not justify or excuse the robbery, and it gave no instruction that proof that the defendant did not own the money was an element of the offense. The defendant did not expressly raise a claim on appeal to the Appellate Court that the trial court had improperly instructed the jury on the elements of § 53a-134 (a) (3), which is the predicate for his insufficiency of the evidence claim. Because the state has made no claim that the defendant failed to raise this issue in the trial court or that he did not distinctly raise the issue in the Appellate Court, we conclude that the issue of the proper interpretation of § 53a-134 (a) (3) was properly before that court.

[4] The Appellate Court also stated that there was "a lack of evidentiary support for the conclusion that the defendant intended to take *any* currency or property worth $294 . . . ." (Emphasis in original.) *State* v. *Smith*, supra, 148 Conn. App. 712. It is unclear whether the Appellate Court concluded that, even if the defendant did not own the money at issue, he still could not be convicted of attempt to commit robbery in the first degree because he did not attempt to take it from Cooper, an issue that the defendant did not raise on appeal to the Appellate Court. We need not resolve this issue, however, because we conclude that, even if the defendant attempted to take the money from Cooper, he could not be convicted of attempt to commit robbery in the first degree because the state has conceded that he owned the money.

The Appellate Court also raised, sua sponte, the question of whether the defendant had attempted to take the specific currency that he had sent to Cooper or, instead, he was attempting to force Cooper to pay a debt. Id., 712–16. The Appellate Court ultimately concluded, however, that the issue was not properly before the court because the state had presented no evidence that would support a finding that the defendant was attempting to enforce payment of a debt. Id., 714–15. Because the state failed to raise this issue at trial, but conceded that the defendant owned the specific money that he attempted to take from Cooper, we reject the state's claim that it is entitled to a new trial at which it can present evidence that the defendant was attempting to enforce a debt.

[5] The defendant claims, as an alternative ground for affirmance, that he was denied his due process right to a fair trial because the prosecutor engaged in prosecutorial impropriety. Because we agree with the Appellate Court's conclusion that the state did not prove all of the elements of attempt to commit robbery in the first degree, we need not address this claim.

[6] Courts in several other jurisdictions also have reached the same conclusion. See *People* v. *Tufunga*, 21 Cal. 4th 935, 948, 987 P.2d 168, 90 Cal. Rptr. 2d 143 (1999) ("[a] conclusion . . . that a claim of right, for policy reasons, should no longer be recognized as a defense to robbery—even where the defendant can establish that he is taking back specific property to which he has lawful title or a bona fide claim of ownership—would mean such a defendant could be convicted of robbery based on theft of his own property, a proposition that would stand in patent conflict with both the commonsense notion that someone cannot steal his own property, and the corollary rule that 'theft,' the taking of 'the personal property of another' . . . is a lesser included offense at the core of every robbery" [citation omitted; emphasis omitted]); id., 949 ("[i]t is difficult to hypothesize facts whereby a defendant who has used sufficient force or threats of violence to regain what he in good faith believes is his own property, thereby exposing himself to a charge of robbery but also possibly qualifying him to interpose a claim-of-right defense, has not also acted in a sufficiently forceful, violent or threatening manner as would separately expose him to prosecution and punishment for assaultive conduct against the robbery victim"); *Edwards* v. *State*, 49 Wis. 2d 105, 112–13, 181 N.W.2d 383 (1970) ("If a person seeks to repossess himself of specific property which he owns and to which he has the present right of possession and the means he uses involves a gun or force, he might not have the intention to steal. While the reclamation of specific removable property at gun point by the owner may not be armed robbery, such self-help may and generally does constitute a lesser crime than robbery. Thus the deterrence of and punishment for such conduct required by public policy are satisfied."); see also *Commonwealth* v. *Larmey*, 14 Mass. App. 281, 285, 438 N.E.2d 382 (1982) (jury instruction that defendant should be acquitted of robbery charge if he believed that money he took from victims had been stolen by them and he intended to return it to owners), overruled on other grounds by *Commonwealth* v. *Liebenow*, 470 Mass. 151, 152 n.1, 20 N.E.3d 242 (2014); *People* v. *Holcomb*, 395 Mich. 326, 333, 235 N.W.2d 343 (1975)

("[i]f the defendant in good faith believed that the money which he demanded was his money, and that he was entitled to its possession, he could not be guilty of either robbery or larceny in taking it, because there would be no felonious intent" [internal quotation marks omitted]); *State* v. *Mejia*, 141 N.J. 475, 496, 662 A.2d 308 (1995) ("a defendant charged with theft or robbery may present evidence proving that the property taken was the defendant's and not the 'property of another' " to negate elements of crime), overruled on other grounds by *State* v. *Cooper*, 151 N.J. 326, 377, 700 A.2d 306 (1997); *People* v. *Green*, 5 N.Y.3d 538, 544, 841 N.E.2d 289, 807 N.Y.S.2d 321 (2005) (claim that property belonged to defendant would negate element of larcenous intent for purposes of defending against robbery charge); *State* v. *Snowden*, 7 Ohio App. 3d 358, 363, 455 N.E.2d 1058 (1982) (defendant's honest belief that he had right to property he was accused of stealing would negate intent element of robbery charge); 3 W. LaFave, Substantive Criminal Law (2d Ed. 2003) § 20.3 (b), pp. 175–76 ("The intent to steal [the animus furandi, to use the Latin term] required for larceny is the same intent to steal [or, as it is sometimes called, intent to rob] needed for robbery. Thus the same factors which negative the intent to steal in larceny will negative the intent to rob in robbery—as where the taking is under an honest, though mistaken, claim of ownership of, or claim of a lawful right to possess, the property . . . ." [Footnotes omitted.]); 3 W. LaFave, supra, pp. 177–78 ("[o]f course, one who collects debts . . . by use of violence or intimidation, though he is not guilty of robbery, need not go free; he is guilty of at least simple battery if he uses force, and of simple assault if he uses intimidation, and of aggravated assault or battery [e.g., assault with a deadly weapon] under appropriate circumstances" [footnote omitted]); cf. *State* v. *Mejia*, supra, 497–500 (under New Jersey law, proof that defendant honestly believed that he was recovering his own property is affirmative defense to theft charge, but not to robbery charge).

[7] See *Drake* v. *State*, 929 A.2d 768, 773 (Del. 2007) (claim of right is not defense to robbery charge), overruled on other grounds by *Wright* v. *State*, 953 A.2d 144, 148 and n.12 (Del. 2008); *State* v. *McMillen*, 83 Haw. 264, 267, 925 P.2d 1088 (1996) (claim-of-right defense does not apply to robbery charge); *State* v. *Miller*, 622 N.W.2d 782, 785 (Iowa App. 2000) ("[t]he modern trend among other states has been to decline to recognize the claim-of-right defense to offenses involving force, such as robbery or burglary"); *State* v. *Miller*, supra, 786 ("basic public policy dictates that even rightful owners should not be permitted to perpetrate break-ins or use force to regain their property, once it has been taken"); *State* v. *Ortiz*, 124 N.J. Super. 189, 192, 305 A.2d 800 (1973) (rejecting claim-of-right defense to robbery as "not only lacking in sound reason and logic, but . . . utterly incompatible with and [having] no place in an ordered and orderly society such as ours, which eschews self-help through violence"); *Commonwealth* v. *Sleighter*, 495 Pa. 262, 266–67, 433 A.2d 469 (1981) ("[w]hile there exists case law which provides that under certain isolated circumstances a good faith claim of right will negate the requisite mental element for theft, certainly where there is violence or threat of violence in the assertion of that claim of right, the law does not excuse the actor who so asserts his claim"); *Elliott* v. *State*, 2 Tenn. Crim. App. 418, 420, 454 S.W.2d 187 (1970) (claim of right is not defense to robbery charge), superseded by statute as stated in *State* v. *Leonard*, Docket No. M2006-00136-CCA-R3-CD, 2007 Tenn. Crim. App. LEXIS 279 (2007) (unpublished opinion); *State* v. *Hobbs*, 64 P.3d 1218, 1222 (Utah App.) ("[w]here the legislature was obviously aware of the availability of the claim of right defense, having included it within the definition of theft, we assume the legislature would have included it within the robbery statute had the legislature intended to do so"), cert. denied, 72 P.3d 685 (Utah 2003); see also *People* v. *Scearce*, 87 P.3d 228, 231 (Colo. App. 2003) (because state robbery statute did not require proof of theft as element of crime, claim-of-right defense to theft charge was not defense to robbery charge).

A number of courts have held that there is no claim-of-right defense to a robbery charge when the defendant took the property in payment of a debt and did not own the specific property that he took. See *People* v. *Tufunga*, 21 Cal. 4th 935, 956, 987 P.2d 168, 90 Cal. Rptr. 2d 143 (1999); *People* v. *English*, 32 Ill. App. 3d 691, 693, 336 N.E.2d 199 (1975) ("it is the law and policy of this [s]tate that a creditor may not employ violence, threats, or weapons to collect the debt but should pursue his remedies in the normal channels of peaceful and legal redress"); *State* v. *Russell*, 217 Kan. 481, 483, 536 P.2d 1392 (1975) ("the violent taking of property from the person of another by force or intimidation for the purpose of applying it to payment of an alleged debt constitutes the offense of robbery where the taker has no bona fide claim of title or right to the possession of the particular property" [emphasis omitted; internal quotation marks omitted]); *State* v. *Jackson*, 55 So. 3d 767, 772 (La. 2011) (claim of right was not defense to

robbery charge when defendant was collecting debt and not recovering specific property that belonged to him); *Commonwealth* v. *Dombrauskas*, 274 Pa. Super. 452, 459, 418 A.2d 493 (1980) ("the modern and better reasoned rule is that a claim of right defense is not available to one who employs force or stealth to recoup money lost in a gambling game or to collect an unliquidated debt"); *Crawford* v. *State*, 509 S.W.2d 582, 585 (Tex. Crim. App. 1974) (overruling prior case in which court had concluded that creditor's assault on debtor for purpose of collecting debt does not constitute robbery). It would appear that this court previously has held to the contrary. See *State* v. *Sawyer*, 95 Conn. 34, 39, 110 A. 461 (1920) ("one who takes another's goods to compel him, though in an irregular way, to do what the law requires him to do with them—namely pay his debt—is on no legal principle a felon, though doubtless he is a trespasser" [internal quotation marks omitted]). As we have indicated herein, however, the question of whether the defendant in the present case was attempting to recover his own specific property or, instead, was attempting to collect on a debt, is not before us in the present case. See footnote 4 of this opinion.

[8] Specifically, the state contends that the public policy against violent self-help "is reflected in the related justification defense of defense of property, pursuant to . . . § 53a-21. This court may infer that the legislature intended to carve out an exception to the standard operation of the robbery statute, and the ordinary meaning of its elements, in order to accommodate and implement this public policy."

[9] It is unclear whether the defendant in *Messier* expressly invoked § 53a-21 or, instead, the Appellate Court invoked the statute sua sponte. As we discuss more fully later in this opinion, the justification defense provided by the statute simply has no bearing on a claim that the state has failed to establish the intent to steal element of larceny.

[10] Similarly, in *State* v. *Woolfolk*, supra, 8 Conn. App. 669, the defendant expressly invoked § 53a-21 to support his claim that he could not be convicted of robbery in the first degree if the jury concluded that the victims had obtained the property at issue from the defendant by larceny. The Appellate Court concluded that § 53a-21 was not a defense to a robbery charge because the statute is limited to the use of reasonable physical force in the defense of property. Id., 672A. The court did not directly address the question of whether a person who has been accused of taking property that he owned from another could have the requisite intent to commit a robbery. To the extent that *Woolfolk* can be interpreted as answering that question in the affirmative, it is also overruled.

[11] We recognize that, in *Morant*, this court cited several cases for the general proposition that public policy frowns on the use of violence to enforce a legal claim. *State* v. *Morant*, supra, 242 Conn. 672–73; see *People* v. *English*, 32 Ill. App. 3d 691, 693, 336 N.E.2d 199 (1975) ("a creditor may not employ violence, threats, or weapons to collect the debt but should pursue his remedies in the normal channels of peaceful and legal redress"); *State* v. *Mejia*, 141 N.J. 475, 499, 662 A.2d 308 (1995) ("emerging trend in other jurisdictions rejects the claim-of-right defense to robbery"), overruled on other grounds by *State* v. *Cooper*, 151 N.J. 326, 377, 700 A.2d 306 (1997). Because the court had already concluded in *Morant*, however, that the defendant did not own the contraband that he had been accused of taking from another, and the question of whether a person can be charged with robbery for taking his own property from another was not before the court, this language in *Morant* was dictum. Although we obviously continue to believe that a person should not use unreasonable force to take property that the person owns from another, and that such conduct is punishable as an assault type offense, for the reasons set forth in this opinion, we now disavow this dictum to the extent that it suggests that the use of unreasonable force to take one's own property can constitute robbery.